**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DIVERSIFIED MAINTENANCE SYSTEMS, INC.**                    **CIVIL ACTION**

**VERSUS**                                                   **NO. 22-959**

**J. STAR ENTERPRISES, INC.**                                **SECTION: "G"(5)**

### ORDER AND REASONS

This litigation arises from a series of contracts between Plaintiff Diversified Maintenance Systems, Inc. ("Plaintiff") and Defendant J. Star Enterprises, Inc. ("Defendant") to submit proposals for construction projects at the U.S. Army Yuma Proving Ground, Arizona. Plaintiff brings open account, breach of contract, and unjust enrichment claims against Defendant.[1] Before the Court is Defendant's "Motion to Dismiss Pursuant to Rules 12(b)(3) and 12(b)(6)."[2] In the motion, Defendant argues that Plaintiff cannot state a claim under Louisiana law because the claims are governed by Utah law.[3] Defendant further argues that all of Plaintiff's claims are subject to an arbitration provision in the initial contract between the parties.[4] In opposition, Plaintiff argues that neither the arbitration provision nor Utah law applies to its claims against Defendant.[5] Considering the motion, the memoranda in support and in opposition, the record and applicable

---

[1] Rec. Doc. 1 at 8–12.

[2] Rec. Doc. 6.

[3] *See* Rec. Doc 6-1 at 3.

[4] *See id.* at 1.

[5] *See* Rec. Doc. 16.

law, the Court denies the motion and grants Plaintiff leave to file a Second Amended Complaint within twenty-one days of this Order.

## I. Background

On April 8, 2022, Plaintiff filed a Complaint in this Court against Defendant.[6] On June 24, 2022, Defendant filed the instant motion to dismiss, which was set for submission on August 10, 2022.[7] On August 1, 2022, the Court granted Defendant's motion to reset the submission date to August 24, 2022.[8] On August 5, 2022, Plaintiff filed an Amended Complaint.[9] In the Amended Complaint, Plaintiff alleges that, in response to the United States Army's solicitation "request[ing] bids for construction services for a broad variety of construction projects at the U.S. Army Yuma Proving Ground, Arizona, commencing on or about February 1, 2018" (the "Solicitation"), the parties entered into a contract whereby Plaintiff would submit a bid and Defendant would have control over the contents of the bid (the "2017 Teaming Agreement").[10] Plaintiff alleges that, under the 2017 Teaming Agreement, if Defendant, as prime contractor, was awarded the contract for the Solicitation, the parties "would enter into a subcontract (or series of subcontractor agreements) to perform each task order under the contract."[11]

On October 15, 2018, after Defendant was awarded the contract for projects under the Solicitation (the "Contract"), the parties allegedly entered into a subcontract "to implement the

---

[6] Rec. Doc. 1.

[7] Rec. Doc. 6.

[8] Rec. Doc. 12.

[9] Rec. Doc. 15.

[10] *Id.* at 3–4.

[11] *Id.* at 4.

teaming relationship previously established under the [2017] Teaming Agreement and govern [the parties'] mutual rights and obligations in completion of the task orders [in the Contract]" (the "2018 Team Subcontract").[12] The 2018 Team Subcontract also allegedly set forth the scope of Plaintiff's work and a timeline of Plaintiff's payment.[13] Plaintiff contends that Defendant has failed to reimburse Plaintiff for $94,014.72 in work performed to complete six task orders pursuant to the 2018 Team Subcontract.[14]

On April 3, 2019, the parties allegedly entered into another subcontract for work at a pool under the Contract (the "2019 Pool Subcontract").[15] Plaintiff alleges that it was quoted $125,000.01 for tasks under the 2019 Pool Subcontract and submitted an invoice for that amount after it completed those tasks.[16] Plaintiff contends that Defendant has not paid it for that work, even though payment was due on June 28, 2019.[17] Then, in January 2020, Plaintiff alleges the parties entered into an oral contract for curative work (the "2020 Oral Contract") after site officials notified them that such work on the pool project was necessary.[18] Plaintiff contends that Defendant has failed to pay $8,426.25 owed under the 2020 Oral Contract.[19] Plaintiff alleges that Defendant

---

[12] *Id.*

[13] *Id.* at 4–5.

[14] *Id.* at 6.

[15] *Id.* at 5.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 6.

sent two demand letters in October and December of 2020 seeking payment of these outstanding balances but Defendant "still has not submitted any payment for this unpaid work."[20]

In the Original Complaint,[21] Plaintiff asserted four counts against Defendant.[22] First Plaintiff asserted an open account claim under Louisiana law for monies due in the principal amount of $219,014.72.[23] Second, Plaintiff asserted a breach of contract claim alleging that Defendant failed to abide by the terms of the 2017 Teaming Agreement, the 2018 Team Subcontract, the 2019 Pool Subcontract, and the 2020 Oral Contract (the "Subcontracts").[24] Third, Plaintiff asserts an unjust enrichment claim in the alternative.[25] Fourth, Plaintiff seeks a declaratory judgment regarding the existence of the Subcontracts and the amount Defendant owes Plaintiff under the Subcontracts.[26]

However, after Defendant filed the instant motion to dismiss, but before it was noticed for submission, Plaintiff filed the Amended Complaint.[27] The Amended Complaint differs from the Original Complaint in only two material respects: (1) Plaintiff brings claims for breach of the 2018 Team Subcontract, the 2019 Pool Subcontract, and the 2020 Oral Contract, but not the 2017

---

[20] *Id.* at 7.

[21] Rec. Doc. 1.

[22] *Id.* at 8–12.

[23] *Id.* at 8–9.

[24] *Id.* at 9–10.

[25] *Id.* at 10–11.

[26] *Id.* at 12.

[27] Rec. Doc. 15.

Teaming Agreement;[28] and (2) Plaintiff asserts an open account claim under two separate counts––one under Louisiana law and one under Utah law.[29] On August 16, 2022, Plaintiff filed an opposition to Defendant's motion to dismiss.[30]

## II. Parties' Arguments

### A.   *Defendant's Arguments in Support of the Motion to Dismiss*

#### 1.   Defendant's Arguments in Support of Dismissal Pursuant to Rule 12(b)(3)

Defendant argues that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(3) because they are subject to an arbitration clause in the 2017 Teaming Agreement.[31] Defendant asserts that Plaintiff's claims are at least partly based upon the 2017 Teaming Agreement, which requires the parties to submit to binding arbitration pursuant to Louisiana and Utah law before a single arbitrator.[32] Defendant avers that, under the Federal Arbitration Act ("FAA"),[33] "a court must compel arbitration if it is satisfied that the claim at issue falls within the scope of a valid, enforceable agreement to arbitrate."[34]Accordingly, Defendant concludes that Plaintiff's claims are premature such that they should be dismissed pursuant to Rule 12(b)(3).[35]

---

[28] *Id.* at 8–12.

[29] *Id.* at 8–9.

[30] Rec. Doc. 16.

[31] Rec. Doc. 6-1 at 1.

[32] *Id.* at 2. Defendant asserts that the 2017 Teaming Agreement states that disputes between the parties "shall be submitted to binding arbitration under [Louisiana law] governing arbitration to the extent of those laws, and the Utah Uniform Arbitration Act . . . for any matters not covered by Louisiana [law]." *Id.*

[33] 9 U.S.C. § 1, *et seq.*

[34] Rec. Doc. 6-1 at 2 (citing 9 U.S.C. §§ 3, 4).

[35] *Id.* at 3.

### 2.      Defendant's Arguments in Support of Dismissal Pursuant to Rule 12(b)(6)

Defendant also argues that all of Plaintiff's claims made pursuant to Louisiana law should be dismissed pursuant to Rule 12(b)(6) because Plaintiff's claims are governed by Utah law.[36] Defendant asserts that there is a choice of law provision favoring Utah in both the 2017 Teaming Agreement and the 2018 Team Subcontract.[37] Thus, Defendant concludes that Plaintiff's claims under Louisiana law should be dismissed.[38]

### B.      Plaintiff's Arguments in Opposition to the Motion to Dismiss

### 1.      Plaintiff's Arguments in Opposition to Dismissal Pursuant to Rule 12(b)(3)

In opposition, Plaintiff makes three arguments that dismissal pursuant to Rule 12(b)(3) is unwarranted. First, Plaintiff argues that the arbitration provision in the 2017 Teaming Agreement does not apply to its claims because the Amended Complaint, which now controls this case, does not bring any claims pursuant to the 2017 Teaming Agreement, but only under the other Subcontracts.[39] Plaintiff asserts that the other Subcontracts do not contain arbitration provisions.[40] Thus, Plaintiff concludes that the Amended Complaint entirely moots Defendant's Rule 12(b)(3) motion to dismiss.[41]

---

[36] *Id.* at 3–4.

[37] *Id.* at 3.

[38] *Id.*

[39] Rec. Doc. 16 at 4.

[40] *Id*.

[41] *Id.* at 5.

Second, Plaintiff argues that, even if the Court were to look to the 2017 Teaming Agreement, its arbitration provision does not apply to the claims in the Amended Complaint.[42] Plaintiff argues that a party can be forced to arbitrate only those issues it has agreed to submit to arbitration.[43] Plaintiff asserts that the language of the 2017 Teaming Agreement reflects the parties' intent that the agreement only governs their relationship up to the award of the Contract and "does not mention the rights and obligations of the parties following the award. . . ."[44] Rather, Plaintiff argues that the 2017 Teaming Agreement "clearly demonstrates the parties' intent that [it] only govern their relationship up to the award of the Contract" by requiring the parties to negotiate future subcontracts in good faith.[45] Further, Plaintiff contends that the arbitration provision applies only to the 2017 Teaming Agreement because it explicitly governs disputes arising out of "this agreement," and the word "agreement" is defined in the contract as "this Teaming Agreement."[46] Thus, Plaintiff concludes that disputes that arose after the award of the Contract are not subject to the arbitration provision in the 2017 Teaming Agreement.[47]

Third, Plaintiff argues that if the Court finds that the arbitration provision does apply to its claims, the appropriate remedy is a stay, not dismissal.[48] Plaintiff avers that "[t]he Fifth Circuit has held that Section 3 of the FAA is mandatory and a court 'shall on application of one of the

---

[42] *Id.*

[43] *Id.* at 5–6 (citing *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1918 (2022)).

[44] *Id.* at 6 (emphasis omitted).

[45] *Id*. at 6–7.

[46] *Id*. at 7–8 (citing Rec. Doc. 15-2 at 2–3, 5).

[47] *See id.* at 8.

[48] *Id.*

parties stay the trial of the action' if a court finds that a valid arbitration provision governs some of a parties' claims."[49] Thus, Plaintiff concludes that, if the arbitration provision does apply to its claims, "this Court should stay the proceedings pending arbitration, rather than dismiss the claims."[50]

### 2.   Plaintiff's Arguments in Opposition to Dismissal Pursuant to Rule 12(b)(6)

Plaintiff argues that the Defendant's motion to dismiss pursuant to Rule 12(b)(6) should be denied because Utah law does not apply to its claims.[51] Plaintiff asserts that the 2019 Pool Subcontract does not apply Utah law and so "this Court should consider choice of law rules only with respect to the [2018] Team Subcontract Agreement."[52] Plaintiff further asserts that Louisiana law applies to its claims under all Subcontracts pursuant to Louisiana's conflict of law principles, which should apply because Louisiana is the forum state and the Court has subject matter jurisdiction on the basis of diversity.[53] Plaintiff contends that  Louisiana's conflict of law principles suggest that Louisiana law should apply to Plaintiff's claims because they "involve significant contacts with Louisiana."[54] Specifically, Plaintiff argues that Defendant is a Louisiana business who formed the contracts at issue in Louisiana.[55] Thus, Plaintiff contends that, because Louisiana

---

[49] *Id*. (citing *Hanberry v. First Premier Bank*, No. 19-10235, 2019 WL 4415267, at *3, *7 (E.D. La. Sept. 16, 2019)).

[50] *Id*.

[51] *Id.* at 8–13.

[52] *Id*. at 9.

[53] *Id.* at 10.

[54] *Id.* 10–12 (citing La. Civ. Code art. 3537).

[55] *Id*. at 12.

law applies, "the Court must then determine if application of Utah law contravenes Louisiana public policy."[56]

Plaintiff argues that the application of Utah law contravenes Louisiana public policy because Louisiana has codified an open account claim whereas Utah's open account claim is recognized by its state courts but not codified.[57] Plaintiff asserts that this illustrates the emphasis that Louisiana has put on enforcement of open accounts" as compared to Utah, which "does not provide for codified remedies."[58] Plaintiff also contends that Defendant, "[a] Louisiana company regularly doing business in Louisiana, must be aware of Louisiana laws and should have a justified expectation that Louisiana's laws would apply."[59] Thus, Plaintiff concludes that "it is clear that Louisiana law applies to any claims brought under the [2018 Team Subcontract]."[60] Plaintiff also requests that it be allowed to file an amended complaint to overcome any pleading defects.[61]

### III. Legal Standard

#### A.    *Legal Standard for a Motion to Dismiss under Rule 12(b)(3)*

A motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) requires a district court to determine whether venue is supported by 28 U.S.C. § 1391.[62] A court's analysis on motions to dismiss pursuant to Rule 12(b)(3) is limited to whether venue is

---

[56] *Id.* (citing *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 251 (5th Cir. 1994)).

[57] *See id.* at 12–13 (citing *Firestone Tire & Rubber Co. v. Pearson,* 769 F.2d 1471, 1484 (10th Cir. 1985); La. Rev. Stat. § 9:2781)).

[58] *Id.* at 13.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 54–55 (2013).

wrong or improper based upon a failure to satisfy any of the categories listed in § 1391.[63] Where a party moves to dismiss claims pursuant to an arbitration clause, it has not argued that venue is improper pursuant to § 1391.[64]

### B.    *Legal Standard for a Motion to Dismiss under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[65] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[66] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[67] "Factual allegations must be enough to raise a right to relief above the speculative level."[68] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[69]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[70] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[71] "While legal conclusions

---

[63] *Id.* at 55–56, 60–61.

[64] *TWTB, Inc. v. Rampick*, No. 22-3399, 2016 WL 4131081, at *1 (E.D. La. Aug. 3, 2016) (Brown, J.).

[65] Fed. R. Civ. P. 12(b)(6).

[66] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[67] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[68] *Twombly*, 550 U.S. at 556.

[69] *Id.* at 570.

[70] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[71] *Iqbal*, 556 U.S. at 677–78.

can provide the framework of a complaint, they must be supported by factual allegations."[72] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[73] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[74] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[75] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[76] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[77]

## IV. Analysis

### A.   Whether Plaintiff's Claims Should be Dismissed Pursuant to Rule 12(b)(3)

Defendant asserts that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) because they are subject to arbitration.[78] However, because Defendant does not argue that Plaintiff's claims should be dismissed for failure to satisfy any of the categories

---

[72] *Id.* at 679.

[73] *Id.* at 678.

[74] *Id.*

[75] *Id.*

[76] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[77] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[78] Rec. Doc. 6-1 at 1–3.

listed in 28 U.S.C. § 1391, Plaintiff's claims cannot be dismissed for improper venue.[79] Furthermore, as this Court explained in *TWTB, Inc. v. Rampick*, although "[t]he FAA provides that a court shall stay a case pending arbitration upon a motion by a party," there appears to be "no cases within the Fifth Circuit where courts treated a motion to dismiss as a motion to compel arbitration, nor . . . a case where a court compelled arbitration *sua sponte*."[80] Thus, in *TWTB*, even though the contracts at issue contained arbitration clauses covering the matters in dispute, this Court denied the defendants' motions to dismiss pursuant to Rule 12(b)(3) because such motions were "not the proper vehicles to address [the plaintiff's] failure to arbitrate."[81] Likewise, Defendant's motion to dismiss pursuant to Rule 12(b)(3) must be denied because it is the improper vehicle for addressing Plaintiff's failure to arbitrate.[82]

**B.     Whether Plaintiff's Claims under Louisiana Law Should be Dismissed Pursuant to Rule 12(b)(6) because Plaintiff's Claims are governed by Utah Law**

Defendant argues that any of Plaintiff's claims brought under Louisiana law should be dismissed pursuant to Rule 12(b)(6) because Plaintiff's claims are governed by Utah law pursuant

---

[79] *See TWTB, Inc.*, 2016 WL 4131081, at *1.

[80] *Id*. at *2–3 (citing *Price v. Drexel Burnham Labert Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986)).

[81] *Id*. at *3.

[82] The Court also notes that, although it need not reach the issue, the parties do not appear to have agreed to arbitrate the dispute in question because it does not fall within the scope of the 2017 Teaming Agreement's arbitration provision. *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998). In the Amended Complaint, Plaintiff does not bring claims under the 2017 Teaming Agreement. *See* Rec. Doc. 15 at 8–12. The Amended Complaint "supersedes the original complaint and renders it of no legal effect." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). The language of the 2017 Teaming Agreement suggests that the parties only intended the arbitration provision to cover the 2017 Teaming Agreement itself, and not the other Subcontracts as well. *See* Rec. Doc. 15-2 at 3 (stating that the arbitration provision at issue covers "[a]ny controversy, dispute, misunderstanding or claim arising out of or relating to *this agreement*") (emphasis added); *see also id*. at 2 (defining the word "agreement" to mean "this Teaming Agreement"). Thus, because none of the other Subcontracts contain an arbitration provision and Plaintiff's claims are based on violations of the other Subcontracts, the Court sees no reason why those claims would be subject to arbitration.

to the choice of law provisions in the 2017 Teaming Agreement and the 2018 Team Subcontract.[83] In opposition, Plaintiff argues that none of its claims in the Amended Complaint arise out of the 2017 Teaming Agreement and that Louisiana law should apply to its claims under Louisiana's choice of law principles.[84] In the Amended Complaint, Plaintiff brings claims under the 2018 Team Subcontract, the 2019 Pool Subcontract, and the 2020 Oral Contract. Before addressing the governing law of each of those Subcontracts, the Court first must analyze whether the choice of law provision in the 2017 Teaming Agreement governs Plaintiff's claims.

### 1.   Whether the 2017 Teaming Agreement's Choice of Law Provision Governs Plaintiff's Claims

Plaintiff argues that the 2017 Teaming Agreement does not apply to Plaintiff's claims because the Amended Complaint does not bring claims pursuant to that contract. As a threshold issue, the Amended Complaint supersedes the Original Complaint because the Amended Complaint does not specifically refer to, adopt, or incorporate the Original Complaint.[85] In the Amended Complaint, Plaintiff does not bring claims under the 2017 Teaming Agreement. Therefore, Plaintiff's claims would only be governed by the choice of law provision in the 2017 Teaming Agreement if that provision applied to its claims under the other Subcontracts. However, the inclusion of a similar choice of law provision in the 2018 Team Subcontract, the exclusion of a choice of law provision in the 2019 Pool Subcontract, and the absence of any language suggesting that the provisions of the 2017 Teaming Agreement would apply to future subcontracts between the parties clearly indicate the parties' intent for the 2017 Teaming Agreement's choice of law

---

[83] Rec. Doc. 6-1 at 3-4.

[84] *Id.* at 8–13.

[85] *King*, 31 F.3d at 346 ("[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); *see also* Rec. Doc. 15.

provision to not apply to the other Subcontracts.[86] Thus, because Plaintiff does not allege that Defendant violated the 2017 Teaming Agreement, the choice of law provision in the 2017 Teaming Agreement does not apply to Plaintiff's claims under the other Subcontracts. Accordingly, the Court must determine the law governing the remaining Subcontracts.

### 2.     Whether Louisiana Law Governs the 2018 Team Subcontract

The Court first considers the 2018 Team Subcontract. Plaintiff argues that Louisiana law governs the 2018 Team Subcontract, whereas Defendant argues that Utah law governs the agreement. The 2018 Team Subcontract states that "[t]his agreement shall be governed exclusively by Utah law except for conflict of law rules."[87] When, as a here, a district court is sitting in diversity, it applies the choice of law rules of the state in which it sits.[88] Thus, the Court applies Louisiana's choice of law rules.

Louisiana law "generally gives contracting parties the freedom to choose which state's law will govern disputes arising out of the contract."[89] Pursuant to Article 3540 of the Louisiana Civil Code, contractual choice of law provisions are presumed valid unless the "chosen" law contravenes the public policy of the state whose law would apply absent the choice of law provision under Article 3537.[90] The party who seeks to invalidate a contractual choice of law provision bears the burden of proving either that the provision is invalid or that the application of

---

[86] *See Pennzoil Co. v. F.E.R.C.*, 645 F.2d 360, 388 (5th Cir. 1981) ("When interpreting a contract, the question is what was the parties' intent, since courts are compelled to give effect to the parties' intentions.").

[87] Rec. Doc. 15-3 at 3.

[88] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)).

[89] *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994).

[90] La. Civ. Code art. 3540; *see also Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 943 (5th Cir. 2000).

the "chosen" law would violate public policy.[91] Thus, the Court must first determine the law that would apply to Plaintiff's claims absent a choice of law provision, and then determine whether the application of the choice of law provision would contravene the public policy of the state whose law would otherwise apply under Article 3537.[92]

Article 3537 provides that the state whose law would otherwise apply is determined by:

[E]valuating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[93]

"The policies referred to in Article 3515" are:

(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.[94]

Plaintiff argues that Louisiana law would apply to Plaintiff's claims under the 2018 Team Subcontract absent a choice of law provision because Defendant negotiated, formed, and performed the contracts in Louisiana, Defendant is a Louisiana company, and Louisiana has a

---

[91] *Barnett v. Am. Const. Hoist, Inc.*, 2011-1261 (La. App. 1 Cir. 2/10/12); 91 So. 3d 345, 349; *Neivens v. Estrada-Belli*, 2017-0225 (La. App. 4 Cir. 9/27/17); 228 So. 3d 238, 246; *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC*, 166 F. Supp. 3d 684, 690 (E.D. La. 2016).

[92] *See Cherokee Pump & Equip. Inc.,* 38 F.3d at 250–51 (5th Cir. 1994).

[93] La. Civ. Code art. 3537.

[94] La. Civ. Code art. 3515.

significant interest in regulating Louisiana business activity.[95] Defendant does not address the issue.[96] The Court finds that the following factors weigh in favor of applying Louisiana law to Plaintiff's claims absent a choice of law provision: Defendant is a Louisiana citizen doing business in Louisiana;[97] and the 2018 Team Subcontract and the 2019 Pool Subcontract appear to have been formed in Louisiana.[98] On the other hand, the following factors weigh in favor of applying Arizona law: Arizona was the location of performance of the Subcontracts;[99] and both parties regularly do business in Arizona.[100] Finally, the fact that Plaintiff is a Utah citizen doing business in Utah weighs in favor of applying Utah law.[101]

The Fifth Circuit's holding in *Cherokee Pump & Equipment Inc.*[102] suggests that Arizona law should apply to Plaintiff's claims absent a choice of law provision. There, the Fifth Circuit determined that Louisiana law should apply to an agreement between a Louisiana distributor-plaintiff and an Illinois manufacturer-defendant because: (1) the overall purpose of the agreement was the establishment of the plaintiff as the defendant's dealer in Louisiana; (2) performance under the contract took place in Louisiana; (3) both parties did business in Louisiana; (4) Louisiana customers purchased the goods that were manufactured under the agreement; and (5) Louisiana

---

[95] Rec. Doc. 16 at 11–12.

[96] *See* Rec. Doc. 6-1.

[97] Rec. Doc. 15 at 1.

[98] The 2018 Team Subcontract and the 2019 Pool Subcontract are on Defendant's letter head and Defendant is a Louisiana-based company. *See* Rec. Docs. 15-3 at 1, 15-4 at 1.

[99] *See* Rec. Doc. 15 at 3 ("The Solicitation requested bids for construction services for a broad variety of construction projects at the U.S. Army Yuma Proving Ground, Arizona.").

[100] *Id*; *see also* Rec. Doc. 16 at 11.

[101] Rec. Doc. 15 at 1.

[102] 38 F.3d 246.

had an interest in protecting all of its citizens and Illinois only had an interest in protecting the defendant.[103] Likewise, in the instant matter: (1) the overall purpose of the Subcontracts was to perform work in Arizona; (2) performance of the Subcontract took place predominantly in Arizona; (3) the parties both do business in Arizona; (4) the work performed under the contract is construction on land located in Arizona; and (5) Louisiana's only interest in the matter is protecting Defendant. Therefore, the Court concludes that, pursuant to Article 3537, Arizona law should apply to Plaintiff's claims under the 2018 Team Subcontract absent a choice of law provision.

Thus, pursuant to Article 3540, to determine the law that governs Plaintiff's claims under the 2018 Team Subcontract, the Court must determine whether the application of the 2018 Team Subcontract's choice of law provision in favor of Utah would contravene the public policy of Arizona. The party who seeks to invalidate a contractual choice of law provision bears the burden of proving either that the provision is invalid or that the application of the "chosen" law would violate public policy.[104] The Fifth Circuit has explained that "[o]ne state's law does not violate another state's public policy merely because the laws of the two states differ."[105]

Plaintiff argues only that the choice of law provision violates public policy. In doing so, Plaintiff operates squarely under the assumption that Louisiana law would otherwise apply. Plaintiff argues that the application of Utah law contravenes Louisiana public policy because Louisiana has codified an open account claim whereas a Utah open account claim is judicially but not statutorily recognized.[106] Even though the Court has determined that Arizona law would

---

[103] *Id.* at 250-51.

[104] *Barnett*, 91 So. 3d at 349; *Neivens*, 228 So. 3d at 246; *Axis Oilfield Rentals,* 166 F. Supp. 3d at 690.

[105] *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982).

[106] *See id.* at 12–13 (citing *Firestone Tire & Rubber Co. v. Pearson,* 769 F.2d 1471, 1484 (10th Cir. 1985); La. Rev. Stat. § 9:2781)).

otherwise apply, this same argument can apply to Arizona law because Arizona has codified an open account claim through Arizona Revised Statute § 12-543.[107] However, Plaintiff provides no authority to support its assertion that it would contravene the public policy of a state that has codified a cause of action to apply the law of a state where that same cause of action is judicially but not statutorily recognized. Rather, nothing in § 12-543 suggests that the application of Utah law would contravene Arizona public policy, as the statute simply codifies a three-year statute of limitations on an open account claim.[108] Therefore, Plaintiff has not carried its burden of demonstrating that the provision violates Arizona public policy. Thus, the 2018 Team Subcontract is governed by Utah law, pursuant to its choice of law provision, and so Plaintiff cannot sustain its claims pursuant to Louisiana law under the 2018 Team Subcontract.

### 3.    Whether Louisiana Law Governs the 2019 Pool Subcontract and the 2020 Oral Contract

Finally, the Court considers which state's law should govern Plaintiff's claims under the 2019 Pool Subcontract and the 2020 Oral Contract. Neither Subcontract contains a choice of law provision.[109] As the Court has already addressed, absent a choice of law provision, it appears Arizona law should govern Plaintiff's claims. Nevertheless, because neither party has addressed this issue, and given that the Amended Complaint brings open account claims under both Louisiana and Utah law, the Court will grant Plaintiff leave to file a Second Amended Complaint to clarify the laws under which Plaintiff asserts its claims.[110]

---

[107] *See* Ariz. Rev. Stat. § 12-543 ("There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions: . . . Upon stated or open accounts other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant . . .").

[108] *Id*.

[109] *See* Rec. Doc. 15-4.

[110] Courts regularly address choice of law issues on motions for summary judgment. *See Pelican Ice & Cold Storage, L.L.C. v. Ross Metal Prods., Inc.*, No.17-7327, 2018 WL 1805929 (E.D. La. Apr. 16, 2018) (Brown J.)

## V. Conclusion

For the foregoing reasons, dismissal pursuant to Rule 12(b)(3) is unwarranted. However, as the Court explained in addressing the motion for Rule 12(b)(6) dismissal, Arizona law appears to govern Plaintiff's claims under the 2019 Pool Subcontract and the 2020 Oral Contract, and the Utah choice of law provision governs Plaintiff's claims under the 2018 Team Subcontract. Thus, the Court grants Plaintiff leave file a Second Amended Complaint to clarify the laws under which it brings its claims. Accordingly,

**IT IS HEREBY ORDERED** that Defendant J. Star Enterprises, Inc.'s "Motion to Dismiss"[111] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Diversified Maintenance Systems, Inc. is granted leave to file a Second Amended Complaint within twenty-one days of this Order to clarify the laws under which it brings its claims.

**NEW ORLEANS, LOUISIANA,** this __5th__ day of December, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

(granting the defendants' motion for partial summary judgment regarding choice of law after determining that New York law should govern the action); *see also Leblanc v. Texas Brine Co., LLC*, No. 12-2059, 2015 WL 7451196 (E.D. La. Nov. 23, 2015); *David v. Signal Int'l, LLC*, No. 08-1220, 2015 WL 3603944 (E.D. La. June 4, 2015); *World Fuel Servs. Singapore Pte, Ltd. v. Bulk Juliana M/V*, No. 13-5421, 2015 WL 575201 (E.D. La. Feb. 11, 2015).

[111] Rec. Doc. 6.